UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | **CIVIL ACTION No. 7:20-cv-106** |
| § | |
| **0.35 ACRES OF LAND, more or less, situated** § | |
| **in HIDALGO COUNTY, STATE OF TEXAS;** § | |
| **and LUZ ELENA MUÑIZ,** § | |
| § | |
| *Defendants.* § | |

**DEFENDANT HILARIA MUÑIZ'S RULE 71.1(i)(1)(C) MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN CONDEMNATION AND DECLARATION OF TAKING**

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................................1

**FACTS AND PROCEDURAL HISTORY**..........................................................................1

**STANDARD OF REVIEW**..................................................................................................3

**ARGUMENT** ........................................................................................................................4

    I.    THE POWER OF EMINENT DOMAIN IS VESTED IN CONGRESS, WHICH MAY IMPOSE BINDING LIMITATIONS ON THE EXECUTIVE. ...........................................................................................4

    II.   THE TAKING DESCRIBED BY THE GOVERNMENT IN THIS CASE EXCEEDS STATUTORY LIMITS ESTABLISHED BY CONGRESS. ..........................................................................................6

**CONCLUSION** ...................................................................................................................10

**CERTIFICATE OF SERVICE** .........................................................................................11

# TABLE OF AUTHORITIES

Cases

*2,913.15 Acres of Land v. United States*, 350 F.2d 356 (5th Cir. 1965).........................................7
*Akin v. Missouri Gaming Com'n*, 956 S.W.2d 261 (Mo., 1997).....................................................11
*Bostock v. Clayton County, Georgia*, --- S. Ct. ---, 2020 WL 3146686 (2020) ............................10
*Cascabel Cattle Company, L.L.C. v. United States*, 955 F.3d 445 (5th Cir. 2020).......................10
*Catlin v. United States*, 324 U.S. 229 (1944)................................................................................4, 9
*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)..................................10
*F.D.I.C. v. Hurwitz*, 384 F.Supp.2d 1039 (S.D. Tex. 2005) ............................................................8
*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229 (5th Cir. 2001) ......................................12
*Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89 (2010) .....................................11
*Lockhart v. U.S.*, 136 S. Ct. 958 (2016).........................................................................................13
*Mena Films, Inc. v. Painted Zebra Productions, Inc.*, 2006 WL 2919517 (N.Y. Supp. 2006) ....11
*Multnomah Cty. v. Azar*, 340 F. Supp. 3d 1046 (D. Or. 2018) .......................................................9
*People ex rel. N.R.*, 139 P.3d 671 (Colo. 2006) ............................................................................11
*Ramos-Portillo v. Barr*, 919 F.3d 955 (5th Cir. 2019) .................................................................10
*SAS Institute, Inc. v. Iancu*, 138 S.Ct. 1348 (2018) ......................................................................13
*Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992).....9
*U.S. ex rel. Tenn. Valley Authority v. Welch*, 327 U.S. 546 (1946)................................................8
*U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286 (5th Cir. 1970) ..........7, 8
*United States House of Representative v. Burwell*, 185 F.Supp.3d 165 (D.D.C. 2016).................8
*United States v. 162.20 Acres of Land*, 639 F.2d 299 (5th Cir. 1981).......................................4, 9

*United States v. Kennedy*, 278 F.2d 121 (9th Cir. 1960) ............................................................... 8
*United States v. MacCollom*, 426 U.S. 317 (1976) ....................................................................... 8
*United States v. Right to Use & Occupy 3.38 Acres of Land, More or Less, in City of Alexandria, State of Va.*, 484 F.2d 1140 (4th Cir. 1973) ................................................................ 8
*W. Union Tel. Co. v. Penn. R.R. Co.*, 195 U.S. 540 (1904) ........................................................... 7

Statutes

10 U.S.C. § 284 ............................................................................................................................. 11
16 U.S.C. § 3801(a)(9) .................................................................................................................. 11
16 U.S.C. § 674 ............................................................................................................................. 11
31 U.S.C. § 1301(a) ........................................................................................................................ 8
43 U.S.C. § 1592(a)(1) .................................................................................................................. 11
43 U.S.C. § 1592(a)(3) .................................................................................................................. 11
5 U.S.C. § 706(2) ............................................................................................................................ 9

Other Authorities

Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. E, tit. II, 121 Stat. 1844 (2008) ....................................................................................................................................... 12
Consolidated Appropriations Act, 2012, Pub L. No. 112-74, div. D, tit. II, 125 Stat. 947 (2012) .. 12
Consolidated Appropriations Act, 2013, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 5 (2013) ... 12
Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 249 (2014) ................................................................................................................................. 12, 13
Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. F, tit. II, 129 Stat. 2524 (2016) ....................................................................................................................................... 13
Department of Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, tit. II, 120 Stat. 1359 (2007) ....................................................................................................................... 12

Rules

FED. R. CIV. P. 71.1 .......................................................................................................................... 7
FED. R. CIV. P. 71.1(c)(2)(A) .......................................................................................................... 9
FED. R. CIV. P. 71.1(i)(1)(C) ........................................................................................................... 7

Treatises

3 Sutherland Statutory Construction § 64:4 & n.3 (8th ed. & 2020 Supp.) .................................. 9

## INTRODUCTION

The Government's chosen authority for the taking at issue includes the 2019 Consolidated Appropriations Act (2019 CAA), "Public Law 116-6, div. A, tit. II, Section 230, 133 Stat. 13, which appropriated the funds that shall be used for the taking." Declaration of Taking Schedule A, ECF No. 1-1 at 2. But on its face, this statute only appropriates funds to construct "pedestrian fencing" and "levee pedestrian fencing," not the roads, vehicle barriers, and other tactical infrastructure for which the Government seeks Defendant Hilaria Muñiz's property. Declaration of Taking Schedule B, ECF No. 1-1 at 4; ECF No. 2-1 at 4. When Congress appropriated funds for roads and other tactical infrastructure associated with border fencing in 2007, 2008, 2012, 2013, 2014, 2016, and 2017 Congress said so explicitly. Absence of similar language from the 2019 CAA confirms that the taking is not authorized with 2019 CAA funds, and this cause should be dismissed pursuant to Rule 71.1(i)(1)(C). *See United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) (taking disallowed where the Government "departs from the statutory limits") (quoting *Catlin v. United States*, 324 U.S. 229, 240 (1944)).

## FACTS AND PROCEDURAL HISTORY

Twelve years ago the Government sued Defendant Hilaria Muñiz to take her property for the similar public purpose stated in this lawsuit. *Compare* ECF No. 1-1 at 4 *with United States of America v. 0.33 Acres of Land, More or Less, Situate in Hidalgo County, Texas, et al.*, 7:8-cv-303, ECF No. 17 at 2 (S.D. Tex. McAllen Division) ("*USA v. .33 Acres*") (attached as Exhibit 1). After more than a decade of litigation and other takings actions in the vicinity of Texas's Rio Grande Valley, the Government informed this Court that in many cases it would have to start over. *See* Status Hearing Nov. 15, 2018, Transcr. at 5:4-6:14, 13:18-22, (7:08-cv-00207, *United States of America v. 1.71 Acres of Land More or Less, et al.*) (attached as Exhibit 2). The Government also

1

notified the Court that flooding had eroded much of the land it took to build a border fence and described this land as now "someplace in the Gulf of Mexico." *Id.*, at 5:5-6. In some cases, the Government described its take as violating international treaty obligations overseen by the International Boundary and Water Commission ("IBWC"). *Id.*, at 8:17-20. For properties located in Los Ebanos, Texas, the Government described significant erosion issues and said that its take "may or may not have to change." *Id.*, at 13:19-20. The Government calls the 2008 takings that now need to be repeated "lazy take[s]." *Id.*, at 12:23-24. At the status hearing on November 15, 2018, the Government informed the Court of its intent to conduct new surveys in the Los Ebanos area. *Id.*, at 13:20-22. The Government also informed the Court of its new desire for "a 150-foot enforcement zone *along with* the fence" on some tracts, as well as "lights and cameras." *Id.*, at 6:7-9 (emphasis added), 7:1-3.

In the course of the Government's first litigation, Defendant Hilaria Muñiz established her ownership of a portion of the Government's earlier take by adverse possession. *See* Minute Entry, Mar. 27, 2019, *USA v. 0.33 Acres*. The Government's first lawsuit to take Defendant's property was closed on March 6, 2020. ECF No. 68, *USA v. 0.33 Acres*.

Forty-six days later, on April 21, 2020, the Government filed this takings action. The Government knew or should have known that Defendant Hilaria Muñiz was an interested party. The Government attended the March 27, 2019, hearing where Defendant Hilaria Muñiz established adverse possession by her continuous occupation of the property that is the subject to this suit, as well as the property that is the subject of earlier litigation. The same day the Government filed this lawsuit, it sent a check to Hilaria Muñiz through her counsel to compensate her for its "lazy take." U.S. Dep't of Justice Letter to Hilaria Muñiz, Apr. 21, 2020 (attached as Exhibit 3). Yet, the

2

Government failed to identify Hilaria Muñiz as an interested party and failed to serve Defendant Hilaria Muñiz with this lawsuit. ECF No. 1-1, at 14.

The Government has now filed a Complaint in Condemnation, ECF No. 1, and a Declaration of Taking, ECF No. 2, to take real property described and identified in Schedules C and D attached to its Complaint in Condemnation. ECF No. 1-1, at 6, 8. Luz Elena Muñiz is the title owner of the Property identified by Plaintiff in this takings action. Gift Deed, Oct. 17, 2014 (attached as Exhibit 4). Defendant Hilaria Muñiz established adverse possession of land immediately east and adjacent to this property in the course of earlier litigation. *See* Minute Entry, Mar. 27, 2019, *USA v. 0.33 Acres*. Defendant Hilaria Muñiz now holds title to this property. Special Warranty Deed, Sept. 16, 2019 (attached as Exhibit 5). Defendant Hilaria Muñiz reasonably anticipates that the Government intends to enter onto her property in the course of any "survey, testing, and other investigatory work" that it is permitted to perform under this takings litigation. ECF No. 1-1, at 4. Defendant Hilaria Muñiz opposes any unlawful entry by the Government or its agents onto her property.

Defendant Hilaria Muñiz has resided on all property that is the subject of this litigation continuously for decades, and maintains an interest in all of this property by virtue of a lease with her daughter, Luz Elena Muñiz. Despite lack of service, Defendant Hilaria Muñiz filed her Original Answer and Objections to Plaintiff's Complaint in Condemnation and Declaration of Taking on June 15, 2020. ECF No. 6.

## STANDARD OF REVIEW

Proceedings to condemn real property are governed by FED. R. CIV. P. 71.1. This rule provides that "[a]t any time before compensation has been determined and paid, the court may,

3

after a motion and hearing, dismiss the action as to a piece of property." FED. R. CIV. P. 71.1(i)(1)(C).

The Court may invalidate a taking and dismiss a takings action when the taking is inconsistent with the statutory text that the Government cites as authority for the taking. *See Catlin v. United States*, 324 U.S. 229, 240 (1945); *see also U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286, 1290 (5th Cir. 1970); *U.S. v. 1.16 Acres of Land, more or less situate in Cameron County, Tex.*, 585 F.Supp.2d 901, 906 (S.D. Tex. 2008).

## ARGUMENT

### I. The power of eminent domain is vested in Congress, which may impose binding limitations on the Executive.

The Supreme Court has long recognized the threat that eminent domain poses to individual property interests, and the need for limitations on the Executive's ability to condemn private property. *See W. Union Tel. Co. v. Penn. R.R. Co.*, 195 U.S. 540, 569 (1904) ("The exercise of the power of eminent domain is against common right. It subverts the usual attributes of the ownership of property. It must, therefore, be given in express terms or by necessary implication."). The exercise of the power of eminent domain is therefore vested in the Legislative branch, which delegates that authority to the Executive with important limitations. *2,913.15 Acres of Land v. United States*, 350 F.2d 356, 359 (5th Cir. 1965) ("The exercise of the power of eminent domain is vested in the legislative branch of the Government.").

Congress generally defines the purpose for a given use of eminent domain power by enacting legislation authorizing the acquisition of specific property for a particular project. *See, e.g., U.S. v. 2,606.84 Acres of Land in Tarrant County, Tex.*, 432 F.2d 1286, 1289-91 (5th Cir. 1970). Congressional appropriations of money also place important limits on the Executive's authority to incur obligations and to make payments, including payments of just compensation for

4

takings. *See United States v. MacCollom*, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress."); *F.D.I.C. v. Hurwitz*, 384 F.Supp.2d 1039, 1093 (S.D. Tex. 2005) ("…agencies may spend appropriated funds only as Congress says."); *United States House of Representative v. Burwell*, 185 F.Supp.3d 165, 168 (D.D.C. 2016) ("Authorization and appropriation by Congress are nonnegotiable prerequisites to government spending."); *See* 31 U.S.C. § 1301(a) ("Appropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."). The Government's power to condemn is "coextensive with [its] power to purchase." *U.S. ex rel. Tenn. Valley Authority v. Welch*, 327 U.S. 546, 554 (1946). The Government's take must "come[] within the class of expenditures that Congress intended to authorize" to be properly authorized by appropriations legislation. *United States v. Right to Use & Occupy 3.38 Acres of Land, More or Less, in City of Alexandria, State of Va.*, 484 F.2d 1140, 1142 (4th Cir. 1973) (citing *United States v. Kennedy*, 278 F.2d 121 (9th Cir. 1960)).

When Congress imposes limits on authority to condemn property, the Executive is not free to disregard those limits. "It is clear that a condemnee may challenge 'the validity of the taking for departure from the statutory limits.'" *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) (quoting *Catlin v. United States*, 324 U.S. 229, 240 (1944)); *accord* FED. R. CIV. P. 71.1(c)(2)(A) (Every condemnation complaint must state "the authority for the taking.").

The authorities permitting challenge to condemnation for lack of statutory authorization are consistent with the Administrative Procedure Act ("APA"), which requires reviewing courts "to hold unlawful and set aside agency action…in excess of statutory…authority…." 5 U.S.C. § 706(2). "It is 'central to the real meaning of "the rule of law," [and] not particularly controversial'

5

that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so." *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992) (citations omitted). "Agency actions beyond delegated authority are '*ultra vires*,' and courts must invalidate them." *Id.*; *see also Multnomah Cty. v. Azar*, 340 F. Supp. 3d 1046, 1070 (D. Or. 2018) (APA injunction remedying erroneous interpretation of appropriation act). The Government acts *ultra vires* here because it violates limitations included in the 2019 CAA and the Court should invalidate the taking. Defendant Hilaria Muñiz invokes the APA as a defense to the taking. ECF No. 6, at 5 ¶20.

Because eminent domain necessarily involves a government agency exercising power to interfere with individual property rights, "courts strictly construe grants of the eminent domain power against the condemnor grantee and in favor of the condemnee property owner." 3 Sutherland Statutory Construction § 64:4 & n.3 (8th ed. & 2020 Supp.) (collecting authorities).

## II. The taking described by the Government in this case exceeds statutory limits established by Congress.

The Government claims that the taking at issue here is authorized by the 2019 CAA, "which appropriated the funds that shall be used for the taking." ECF No. 1-1 at 2. But the 2019 CAA provides that funds "shall be available *only*" for the "construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector." Pub. L. 116-6 § 230(a)(1) (emphasis added). The public purpose identified by the Government for the taking at issue here extends beyond what Congress authorized. The Government takes Hilaria Muñiz's property to perform investigatory work needed to "plan the proposed construction of roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas." ECF No. 1-1, at 4; ECF No. 2-1, at 4. This is inconsistent with the plain text of the 2019 CAA, its structure, and its legislative history.

The taking described by the Government in this case improperly ignores limits that Congress placed on the Executive's condemnation authority, in derogation of all authority cited in Part I above.

Courts interpret federal statutes in accord with the ordinary public meaning of its terms at the time of its enactment. *Bostock v. Clayton County, Georgia*, --- S. Ct. ---, 2020 WL 3146686 at *4 (2020); *Cascabel Cattle Company, L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). "[I]f the text of the statute is clear, 'that is the end of the matter; for the court, as well as the [agency], must give effect to the unambiguously expressed intent of Congress." *Ramos-Portillo v. Barr*, 919 F.3d 955, 958–59 (5th Cir. 2019) (*quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

Section 230(a) of the 2019 CAA provides that fiscal year 2019 Treasury funds:

> shall be available only as follows:
> (1) $1,375,000,000 is for the construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector;
> (2) $725,000,000 is for the acquisition and deployment of border security technologies and trade and travel assets and infrastructure, to include $570,000,000 for non-intrusive inspection equipment at ports of entry; and
> (3) $270,222,000 is for construction and facility improvements, to include $222,000,000 for humanitarian needs, $14,775,000 for Office of Field Operations facilities, and $33,447,000 for Border Patrol station facility improvements.

Public Law 116-6, div. A, tit. II, Section 230(a), 133 Stat. 13 (2019).

"Only" means that items not included are specifically excluded. *See, e.g., People ex rel. N.R.*, 139 P.3d 671, 683 (Colo. 2006) (construing a statute that dealt with the circumstances under which a district attorney could be disqualified and holding that "[t]he word 'only' in the statute represents an unequivocal statement that this list is meant to be exhaustive") (emphasis added); *Mena Films, Inc. v. Painted Zebra Productions, Inc.*, 2006 WL 2919517 at *2 (N.Y. Supp. 2006)

7

("exclusive and mandatory forum selection clauses must have language (e.g., the word 'only') that 'mandates that the designated courts are the only ones which have jurisdiction'"); *Akin v. Missouri Gaming Com'n*, 956 S.W.2d 261, 263 (Mo., 1997) ("The word 'only' means 'exclusively, solely.'"); *see generally* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 93 (2012) (under the canon of *casus omissus*, a matter not covered by a statute should be treated as intentionally omitted).

Subsection (1) of the 2019 CAA provides funds "only…for the construction of *primary pedestrian fencing*, including *levee pedestrian fencing*, in the Rio Grande Valley sector." Pub. L. 116-6, § 230(a)(1) (2019) (emphasis added). Absent from this language is any reference to Plaintiff's identified public purpose of planning the construction of "roads…vehicle barriers, security lighting, cameras, sensors, and related structures." that are associated with the fencing. ECF No. 1-1, at 4; ECF No. 2-1, at 4. The plain meaning of the word "fencing" does not authorize roads or other infrastructure that is not a barrier. Consistent with the plain meaning of "fencing," many statutes make clear distinctions between "fences" and "roads." *See, e.g.,* 10 U.S.C. § 284; 16 U.S.C. § 674; 16 U.S.C. § 3801(a)(9); 43 U.S.C. § 1592(a)(1); 43 U.S.C. § 1592(a)(3). "Where the text permits, congressional enactments should be construed to be consistent with one another." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 108 (2010); *see also Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 (5th Cir. 2001) ("…[I]n determining meaning of particular statutory provision, it is helpful to consider interpretation of other statutory provisions that employ the similar language.").

The Government itself recognizes that tactical infrastructure is distinct from fencing. "Tactical Infrastructure supports the design, real estate planning, environmental planning and acquisition, construction and construction oversight for new roads on the southwest border, as well

8

as the *replacement* of border fencing." U.S. Dep't of Homeland Security, U.S. Customs and Border Protection, Budget Overview, Fiscal Year 2019, at CBP – PC&I – 40 (pdf pg. 359) (attached as Exhibit 6) (emphasis added). The President's Budget for Fiscal Year 2019 describes Tactical Infrastructure as distinct from new Border Wall Construction, *see, e.g., Id*., at CBP – PC&I – 22-23 (pdf pgs. 341-42), and made no request for Tactical Infrastructure funds, *Id*. at CBP – 16 (pdf pg. 16).

Legislative history only confirms that Congress meant what it said in statutory text: money is available for fencing, but not associated tactical infrastructure. In prior appropriations, Congress repeatedly authorized the use of funds in connection with border security infrastructure apart from fencing. For example, in fiscal years 2007, 2008, 2012, 2013, 2014, and 2016, Congress appropriated funds broadly for "border protection fencing, infrastructure, and technology." *See* Department of Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, tit. II, 120 Stat. 1359 (2007) ("expenses for customs and border protection fencing, infrastructure, and technology"); Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. E, tit. II, 121 Stat. 1844 (2008) (same); Consolidated Appropriations Act, 2012, Pub L. No. 112-74, div. D, tit. II, 125 Stat. 947 (2012) (same); Consolidated Appropriations Act, 2013, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 5 (2013) (same); Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. F, tit. II, 128 Stat. 249 (2014) (same); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. F, tit. II, 129 Stat. 2524 (2016) (same). In 2017, Congress specifically authorized "new border road construction" through its appropriations legislation. *See* Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, div. F, tit. II, 131 Stat. 434 (2017). If Congress wanted to authorize the use of fiscal year 2019 funds for the construction of roads along the border and infrastructure, it knew how to do so. The fact that Congress did not include the same authorization in the 2019

9

CAA indicates its specific intent to limit the Executive's expenditure of funds through eminent domain proceedings. *See SAS Institute, Inc. v. Iancu*, 138 S.Ct. 1348, 1355 (2018) ("Congress's choice to depart from the model of a closely related statute is a choice neither we nor the agency may disregard.").

The Government may argue that the tactical infrastructure appropriation appears in Subsections (2) and (3) of the 2019 CAA. Not so. Subsection (1) is the only part of the statute that addresses border barriers. The only "infrastructure" addressed in Subsection (2) pertains to "trade and travel," including ports of entry, both of which are distinct from the border barriers addressed in Subsection (1). *See Lockhart v. U.S.*, 136 S. Ct. 958, 962 (2016) (Under the "rule of the last antecedent," qualifying words or phrases modify only the words or phrases immediately preceding them.). Subsection (3) is limited to construction and improvement of specific facilities, none of which can be construed to include roads adjacent to border fencing.

## CONCLUSION

For the foregoing reasons, Defendant respectfully prays that this Court dismiss the Government's Complaint in Condemnation and Declaration of Taking.

Dated: July 7, 2020                                    Respectfully submitted,

                                                       TEXAS RIOGRANDE LEGAL AID

                                                       */s/ Peter McGraw*
                                                       Peter McGraw
                                                       Attorney in Charge
                                                       S.D. Tex. No. 2148236
                                                       1206 East Van Buren St.
                                                       Brownsville, Texas 78520
                                                       Phone: (956) 982-5543
                                                       Fax: (956) 541-1410
                                                       pmcgraw@trla.org

                                                       Jerome Wesevich
                                                       S.D. Texas Bar No. 17397

1331 Texas Avenue<br>
El Paso, Texas 79901<br>
Phone: (915) 585-5120<br>
jwesevich@trla.org

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on the 7th day of July, 2020, he electronically submitted a true and correct copy of the foregoing motion with the Court via the CM/ECF system, which will serve a copy on all counsel of record and mailed a copy of the foregoing motion to:

Luz Elena Muñiz
1403 Terrace Dr.
Mission, Texas 78572

<i>/s/ Peter McGraw</i>_____<br>
Peter McGraw